# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL K. YOUNG, in his official capacity as President of Texas A&M University, <br><br> Defendant. | Civil Action No. 4:18-cv-01547 <br><br> Hon. Judge Hughes |

### PLAINTIFF'S INTERROGATORIES TO DEFENDANT

Pursuant to Federal Rules of Civil Procedure 26 and 33, the Local Rules of the United States Court for the Southern District of Texas, and any applicable Orders of this Court, Plaintiff, by its undersigned attorneys, requests that Defendant Michael K. Young, in his official capacity as President of Texas A&M University, respond to the following interrogatories separately and fully, in writing within (30) days from the date of service, and in accordance with the instructions and definitions set below.

### DEFINITIONS

1. "All" means any and all, and shall be construed to include the term "each," and "each" shall be construed to include the term "all."

2. "Date" shall mean the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

3. "Including" means including without limitation.

1

4. "Reflects," "refers," relates," "regards," and their cognates mean directly or indirectly comprising, mentioning, concerning, constituting, identifying, discussing or describing, pertaining to, or being connected with, a stated subject matter.

5. "Defendant" refers to Michael K. Young, in his official capacity as President of Texas A&M University, and any of his successors, predecessors, alternative or subsequent names, and/or any of his respective employees, agents, and representatives and/or all other persons over whom he exercises control as contemplated by the rules and guidelines governing discovery in this action.

6. "You" or "Your" refers to Defendant.

7. "A&M" or "Texas A&M" refers to Texas A&M University as an institution and any employees, agents, or representatives of the Defendant who are responsible for carrying out the Defendant's challenged policies and practices with respect to moderating and removing content from online or other forums.

8. "Facebook Page," "A&M Facebook Page," or "Page" refer to the website created and operated by A&M on the Facebook social media platform. The Page can be accessed at https://www.facebook.com/tamu/.

9. "Page settings" or "settings" refer to administrative controls given by Facebook, Inc. to A&M that allow A&M, among other things, to set constraints on who may access the A&M Facebook Page, who may interact with the A&M Facebook Page, who may post content on the A&M Facebook Page, whether or not A&M must approve content before it is posted on the A&M Facebook Page, and what content is automatically blocked from the A&M Facebook Page.

10. "Automatic filter" or "filter" refers to a specific Facebook Page setting that enables A&M to identify specific words that are not allowed on the A&M Facebook Page, resulting in

2

A&M using this Facebook setting to automatically remove posts or comments that contain one of the blocked words.

11. "Content" refers to visitor posts, comments, or any other way in which individuals may communicate on the A&M Facebook Page to A&M or to other individuals who are able to access the Page.

12. "Visitor posts" refer to stand-alone content viewable on the Texas A&M Facebook page under the "Posts" subsection. Visitor posts are content created by students, alumni, or other visitors to the Page, and are different from the A&M created posts that appear on the A&M Facebook "Home" Page.

13. "Comments" refer to content in the spaces underneath and attached to stand-alone posts, where individuals may respond to both A&M posts as well as visitor posts on the A&M Facebook Page.

14. "Moderation" refers to any attempt to control the content or speakers on the A&M Facebook page.

15. "PETA" refers to Plaintiff, People for the Ethical Treatment of Animals, Inc.

16. "Dog lab" refers to the research project at Texas A&M University that studies canine muscular dystrophy.

17. The capitalization of certain terms in these Definitions is not intended to be limiting in any way. Unless indicated otherwise, should a term appear in lowercase, that term should be given the same definition as described herein for its equivalent in uppercase, and vice versa.

18. "The" shall not be construed as limiting any topic herein.

19. The connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the meaning most inclusive.

20. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

## INSTRUCTIONS

1. Unless otherwise specified, these interrogatories are limited to the time period from January 1, 2016, to and including the date of service of these interrogatories.

2. Where knowledge, information, or documents are requested, such request encompasses knowledge, information, or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody, or control of your proprietary knowledge, information, or documents.

3. Pursuant to Fed. R. Civ. P. 26(e), you are under a duty seasonably to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

4. For any interrogatory or part of an interrogatory which you refuse to answer under a claim of privilege, submit a sworn or certified statement from your counsel or one of your employees in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

5. Answer each interrogatory fully. If you object to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If you are unable to

answer an interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and identify or describe all other sources of more complete or accurate information.

6. If, in responding to any of the following Interrogatories, you claim any ambiguity in interpreting the Interrogatory, or a definition or instruction applicable thereto, you shall not use such claim as a basis for refusing to answer, but instead shall set forth as part of your response the language deemed to be ambiguous and the interpretation chosen or used by you in answering the Interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify and describe the process for editing, updating, or otherwise changing the page settings on the A&M Facebook Page.

### INTERROGATORY NO. 2

Identify and describe A&M's chosen page settings for the A&M Facebook page and the rationale for each chosen setting.

### INTERROGATORY NO. 3

State the number of persons who visited the A&M Facebook page in the most recent year for which A&M has a full-year of data.

### INTERROGATORY NO. 4

State the number of visitor posts on the A&M Facebook page.

### INTERROGATORY NO. 5

State the number of visitor comments on the A&M Facebook page, and the range of the number of comments per post.

### INTERROGATORY NO. 6

Identify and describe A&M's history and frequency of monitoring and/or moderation on

the A&M Facebook Page.

**INTERROGATORY NO. 7**

Identify and describe the process used by A&M for determining what words should be added to the Facebook automatic filter.

**INTERROGATORY NO. 8**

Identify and describe the specific instances where A&M decided to moderate, remove, or prevent the placement of content on the A&M Facebook Page through Facebook's automatic filter settings.

**INTERROGATORY NO. 9**

Identify and describe the specific instances where A&M decided to add the name of a speaker or organization to Facebook's automatic filter settings.

**INTERROGATORY NO. 10**

Identify and describe the process used by A&M for manually removing content from the A&M Facebook Page.

**INTERROGATORY NO. 11**

Identify and describe the specific instances that A&M has manually removed content from the Page.

**INTERROGATORY NO. 12**

Identify and describe all facts regarding whether content posted on A&M's Facebook page by PETA or PETA supporters might impede the ability of A&M to use the page to make information available to the public, or impede the ability of students or members of the public to use the page to post their own content or access non-PETA content. This request includes:

6

a) the numbers of comments and visitor posts placed on A&M's Facebook page by PETA or PETA supporters,

b) the type of A&M Facebook Posts that PETA and PETA supporters were commenting on, and

c) whether any students, alumni, or other non-staff members of the A&M community complained about any posts on the A&M page from PETA or PETA supporters, and if so, the date of the complaint, the identity of the complainant, and the substance of the complaint.

**INTERROGATORY NO. 13**

Identify and describe A&M's response to PETA's campaign against the dog labs at A&M, including actions taken by A&M to limit PETA's and PETA supporters' ability to speak on campus, at A&M events, or in online spaces or social media managed or controlled by A&M.

**INTERROGATORY NO. 14**

Identify and describe all of the A&M interests that are purportedly served by the inclusion of "PETA," "lab," "abuse," and other PETA campaign-related words in the Facebook automatic filter, and by manually removing PETA and anti-dog lab-related content from the A&M Facebook Page.

**INTERROGATORY NO. 15**

For each of the A&M interests identified in response to Interrogatory No. 14, identify and describe how A&M's inclusion of the foregoing words in its automatic filter, and its manual removal of PETA and anti-lab content from the page, purportedly advance those interests.

## INTERROGATORY NO. 16

Identify the A&M employees, officers, or agents most knowledgeable about the subjects raised in the foregoing interrogatories. For each such person, identify their name, their job title, and the subjects regarding which they are most knowledgeable.

DATED: September 28, 2018

Respectfully submitted by:

*/s/ David Greene*
DAVID GREENE*
*Attorney-in-Charge for Plaintiff*
California Bar No. 160107
ADAM SCHWARTZ*
California Bar No. 309491
CAMILLE FISCHER*
Maryland Bar No. 201612130192
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
davidg@eff.org

*Admitted *pro hac vice*

GABRIEL WALTERS*
District of Columbia Bar No. 1019272
PETA Foundation
1536 16th Street NW
Washington, DC 20036
202.483.7382 telephone
gabew@petaf.org

CHRISTOPHER ROTHFELDER
Texas Bar No. 2408470
Southern District No. 2449594
Rothfelder & Falick, L.L.P.
1201 Louisiana St., Suite 550
Houston, TX 77002
713.220.2288 telephone
crothfelder@rothfelderfalick.com

*Attorneys for Plaintiff*