IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., <br> *Plaintiff*, <br><br> v. <br><br> MICHAEL K. YOUNG, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF TEXAS A&M UNIVERSITY, <br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No. 4:18-CV-01547 |

**DEFENDANT'S PROPOSED REQUESTS FOR PRODUCTION, REQUESTS FOR ADMISSION, AND INTERROGATORIES TO PLAINTIFF PETA**

TO:  Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA"), by and through their attorneys of record via CM/ECF.

Pursuant to the Court's Order and Federal Rules of Civil Procedure 26, 33, 34 and 36, Defendant Michael K. Young, in his official capacity as President of Texas A&M University ("TAMU") respectfully proposes the following requests for discovery in the above-captioned cause. You are hereby requested to serve your responses to these Requests upon undersigned counsel for Defendant within thirty (30) days of the Court's order effecting service or otherwise ordering you to respond to the same. These Requests shall be deemed continuing so as to require you or your attorney to reasonably supplement your responses if you, your attorney or any other person acting on your behalf obtain further documents between the time of your responses and time of trial. FED. R. CIV. P. 26(e).

1

        Respectfully submitted,

        KEN PAXTON
        Attorney General of Texas

        JEFFREY C. MATEER
        First Assistant Attorney General

        BRANTLEY STARR
        Deputy First Assistant Attorney General

        JAMES E. DAVIS
        Deputy Attorney General for Civil Litigation

        DAVID A. TALBOT
        Acting Chief, General Litigation Division

        <u>/s/Anne Marie Mackin</u>
        ANNE MARIE MACKIN
        Texas Bar No. 24078898
        Assistant Attorney General
        General Litigation Division
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
        (512) 475-4074
        (512) 320-0667 FAX
        anna.mackin@oag.texas.gov

        ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on August 28, 2018, these proposed requests for discovery were filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

        <u>/s/Anne Marie Mackin</u>
        ANNE MARIE MACKIN
        Assistant Attorney General

## DEFINITIONS & INSTRUCTIONS

1. "**Person**" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

2. "**You**," "**your**" or "**Plaintiff**" means People for the Ethical Treatment of Animals, Inc. ("PETA"), and any representative acting or purporting to act on PETA's behalf. This includes, without limitation, its arms, divisions, subsidiaries, and affiliated or related entities (**including PETA Latino and PETA2**), employees, attorneys, consultants, agents, or any other representative.

3. "**Defendant**," "**Young**" or "**TAMU**" means Michael K. Young, in his official capacity as president of Texas A&M University, and any representative acting or purporting to act on his behalf in that capacity, including but not limited to employees, attorneys, consultants, agents, or any other representative.

4. "**Complaint**" refers to PETA's First Amended Complaint (Dkt. 17), and any subsequent amendments and/or supplements thereto.

5. "**Document**" means all writings of every kind, source and authorship, both originals and all non-identical copies thereof, in your possession, custody, or control. The term shall include handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

6. "**Communication**" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including statements, discussions, conversations, correspondence, speeches, meetings, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes, without limitation of generality, both communications and statements which are face-to-face, and those which are transmitted by means of intercom, telephone, television, radio, mail, facsimile, or email/electronic mail.

7. "**Identify**" when referring:

    a. to a person, means to state the full name, the present or last known address, telephone number(s), and email address(es);

    b. to a document, means to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify who has present, or last known, possession, custody, or control of the document;

    c. to an organization or business entity, means to state its full name and present or last known address and telephone number;

    d. to a statement, means to describe its contents, list the date and location where it was made, identify who made the statement, and identify who has custody or control of any recording of the statement.

8. **Privilege log request**. If any document is withheld on the basis of privilege, you are instructed, pursuant to Rule 26(b)(5), to produce a privilege log within 30 days identifying the privilege claimed and document withheld, the date of the document, the originator(s) and recipient(s) of the document, and all persons who reviewed, read, or participated in creating the document. Your response must be sufficient to allow Defendant's counsel to determine the propriety of the privilege.

9. **Time period.** Unless otherwise stated, the time period for each request is from January 1, 2016 to the present, and the requests are continuing, meaning they should be supplemented through date of final trial on the merits.

10. **Duty to specifically admit or deny and make reasonable inquiry in responding to Requests for Admissions.** Pursuant to Federal Rule of Civil Procedure 36(a)(4), "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. **A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest**. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made **reasonable inquiry** and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:** Please produce the full download/complete .zip file of PETA's[1] Facebook Page, located on the Page Administrator's account at Settings > General > Download Page.

**REQUEST NO. 2:** Please produce copies of all content that PETA distributed about TAMU's canine research laboratory. This includes, without limitation, social media posts, emails, robocalls, scripts for live telephone calls, form letters, videos, advertisements, text messages, direct mail, direct messages, automated messages including those on social media, advertisements, and promotional content designed to incentivize individuals to share the content with others.

**REQUEST NO. 3:** Please produce copies of the materials that PETA consulted in its assessment—if any—of whether the content PETA distributed about TAMU's canine research laboratory is truthful.

**REQUEST NO. 4:** To the extent not produced in response to Request No. 3 above, please produce copies of the materials that PETA consulted in preparing the content that PETA distributed about TAMU's canine research laboratory.

**REQUEST NO. 5:** Please produce documents sufficient to show the information PETA collected and/or received to assess the progress of its "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint.

**REQUEST NO. 6:** Please produce copies of PETA's internal and external communications (including, without limitation, emails, texts, memoranda, and all other correspondence) discussing PETA's investigation into TAMU's canine research laboratory. This includes, without limitation, communications among or within leadership, investigators, and/or social media team members.

**REQUEST NO. 7:** Please produce copies of PETA's internal and external communications (including, without limitation, emails, texts, memoranda, and all other correspondence) discussing PETA's "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint. This includes, without limitation, communications among or within leadership, investigators, and/or social media team members.

**REQUEST NO. 8:** Please produce documents sufficient to show the other institutions engaged in muscular dystrophy research that PETA has researched and/or investigated, and the findings of those investigations.

---

[1] Please note the definition of PETA in Definitions & Instructions portion of these Proposed Requests, which include all of its arms, divisions, subsidiaries, and related entities including but not limited to PETA Latino and PETA2.

**REQUEST NO. 9:** Please produce a copy of the Page Moderation Settings applicable to PETA's Facebook Page (https://www.facebook.com/official.peta/) as of September 27, 2018.

**REQUEST NO. 10:** Please produce copies of documents sufficient to show PETA's content calendar, marketing campaign, or equivalent reflection of the advocacy plan for PETA's "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint.

**REQUEST NO. 11:** Please produce copies of the training materials that PETA distributes to those interested in participating in demonstrations, protests, and other activities designed to disrupt meetings and events

## REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:** Admit or deny that PETA supporters have made threats against TAMU employees.

**REQUEST NO. 2:** Admit or deny that PETA can send a private message to TAMU via TAMU's Facebook page.

**REQUEST NO. 3:** Admit or deny that universities use their social media accounts for customer service.

**REQUEST NO. 4:** Admit or deny that therapies for DMD researched in canines at TAMU have been approved for human clinical trials.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please describe the process and accompanying technologies that PETA has used to create and/or distribute automated messages on its supporters' personal social media accounts in the course of the "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint.

**INTERROGATORY NO. 2:** Please identify all occasions and means through which each content item identified in response to Request for Production 1, *supra*, was distributed during PETA's "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint.

**INTERROGATORY NO. 3:** Please identify all occasions on which PETA and PETA2 have communicated with supporters offering PETA points and/or other incentives for those supporters to post on TAMU's social media accounts and/or TAMU social media content about Texas A&M's canine research laboratory.

**INTERROGATORY NO. 4:** Please identify all occasions on which PETA and PETA2 social media channels have mentioned and/or tagged TAMU on social media from November 2016 to the present.

**INTERROGATORY NO. 5:** To the extent not identified in your responses to Interrogatories 1-4, above, please list the activities that PETA has undertaken during its "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint.

**INTERROGATORY NO. 6:** Do you contend that the content PETA generated about TAMU's canine research laboratory is true? If so, please state the basis for that contention.

**INTERROGATORY NO. 7:** What efforts, if any, did PETA engage in to assess the truth or falsity of the content that PETA distributed about TAMU's canine research laboratory? If none, please so state.

**INTERROGATORY NO. 8:** Please describe the process by which PETA validated that the photography and videography of contained in its content about TAMU's canine research laboratory was shot at TAMU. If PETA did not take steps to validate that this photography and videography was shot at TAMU, please so state.

**INTERROGATORY NO. 9:** During the entire period when PETA changed its Twitter account name description to "Stop TAMU Dog Labs," (approximately August 26, 2018 – September 2, 2018), please list:

   i.  the number of times PETA posted about animal abuse, and;
   ii.  the number of posts (within your response to part i) that were about TAMU.

**INTERROGATORY NO. 10:** Please identify the social media accounts from which PETA has ever been blocked, filtered, or otherwise excluded.

**INTERROGATORY NO. 11:** Other than the comments and visitor posts sections of TAMU's Facebook page, please identify the other settings from which PETA contends its speech about TAMU's canine research laboratory has been excluded. This includes both online and spaces in the physical world. If none, please so state.

**INTERROGATORY NO. 12:** Please identify the social media user accounts which PETA has blocked, filtered, or otherwise excluded from interacting with its social media accounts.

**INTERROGATORY NO. 13:** Do you contend that the TAMU actions alleged in the First Amended Complaint violate TAMU's social media policy, attached to that Complaint as Exhibit A? If so, please state the basis for that contention.

**INTERROGATORY NO. 14:** Please describe all efforts PETA has undertaken to encourage its supporters to participate in its "public awareness" and "advocacy campaign" against TAMU, as mentioned in Paragraphs 1 and 33 of the First Amended Complaint. In your response, please an explanation of the "PETA Points" program, and how it was used to incentivize individuals to participate in this campaign.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., *Plaintiff*, | § § § § | |
| v. | § § | No. 4:18-CV-01547 |
| MICHAEL K. YOUNG, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF TEXAS A&M UNIVERSITY, *Defendant*. | § § § § § | |

## VERIFICATION OF INTERROGATORIES

**STATE OF TEXAS** §
§
**COUNTY OF** _____ §

BEFORE ME, the undersigned authority, personally appeared PETA's representative, _____ who stated, upon oath, that the statements made in the foregoing instrument are within his personal knowledge and are true and correct.

_____
[Signature]

_____
[Printed name]

**SUBSCRIBED AND SWORN TO BEFORE ME** on _____, 20\_\_\_\_ by _____.

_____
Notary Public, State of Texas