UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | Civil Action No. 4:18-cv-01547 |
| Plaintiff, | ) ) | Hon. Judge Hughes |
| v. | ) ) | |
| MICHAEL K. YOUNG, in his official capacity as President of Texas A&M University, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED DISCOVERY PLAN**

The parties, pursuant to this Court's instructions at the appearance on September 10, 2018, and this Court's Management Order of September 10, 2018 (ECF 31), submitted their proposed discovery plans on September 28, 2018 (ECF 37 & 38). During the appearance, the Court indicated that it would consider the parties' discovery requests and decide whether to approve or deny them. *See* Exh. 1 (Hr'g Tr.) at 25:14-17 ("I don't simply sit back while the parties try to bankrupt each other with pointless discovery and excessive demands. I want a defined set of documents. If it has the word 'all' in it, it will probably be denied.").

In an effort to assist the Court in its consideration of whether to approve or deny the parties' written discovery requests, Plaintiff, through counsel, respectfully submits the following[1]:

---

[1] Plaintiff reserves the right to object to discovery requests that the Court might allow Defendant to serve, at the appropriate time.

1

1.      **Defendant's Proposed Discovery Improperly Seeks to Probe the Truth or Falsity of Plaintiff's Protected Speech.**

This case is about access to the public sections of Texas A&M University's Facebook page, which Plaintiff alleges constitutes a public forum. Plaintiff's viewpoint, as alleged, is that Texas A&M operates a dog laboratory that is cruel and should be closed. This viewpoint, and the speech by which Plaintiff expresses it, are at the very core of the First Amendment.

Defendant's proposed discovery requests are designed to probe the truth or falsity of Plaintiff's speech, as well as Plaintiff's knowledge of whether its speech is true or false. *See* Def's RFP Nos. 3, 4 (ECF No. 38-1 at 5); Def's Interrogatories Nos. 6, 7, 8 (ECF No. 38-1 at 8). This line of inquiry is irrelevant and improper.

Of course, Plaintiff believes its speech to be true.[2] If Defendant believes that some statements PETA has published on Texas A&M's Facebook page are false, then it already knows what those statements are, and there is no reason for it to seek burdensome and invasive discovery regarding any other statement. The veracity of statements made by PETA or its supporters in any other context or forum are not relevant to this litigation and should not be subject to discovery. So if any discovery is permissible, it is only that which relates to specific statements, made on Texas A&M University's Facebook page, that Texas A&M believes are false, and it should be required to identify them. And while it goes without saying that although Texas A&M might disagree with PETA's subjective evaluation that the dog labs are "cruel," that evaluation is PETA's viewpoint and protected opinion. To the extent Texas A&M censored its Facebook page to eliminate that viewpoint, that is a concession of viewpoint discrimination, not a basis for invasive discovery. And

---

[2] In defamation cases, the district judge has a gatekeeping role to play to determine whether the defamation defendant's speech is capable of being proved true or false, at the motion to dismiss stage. This is not that case because: 1) there is no defamation counterclaim, and 2) PETA's speech, as alleged, constitutes protected opinion at the core of the First Amendment. Defendant has no viable counterclaim on these facts.

2

to the extent Texas A&M sought to censor unknown future speech because it was concerned that PETA would make future false statements, that is a classic unconstitutional prior restraint, *see Near v. Minnesota*, 284 U.S. 697 (1931), not a basis for invasive discovery.

"The remedy for speech that is false is speech that is true. This is the ordinary course in a free society. The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straightout lie, the simple truth." *United States v. Alvarez*, 567 U.S. 709, 727-28 (2012) (citing *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.")). Of course, Texas A&M has ample opportunity to counter PETA's speech with that of its own in the marketplace of ideas, including on its Facebook page.

As Justice Holmes so eloquently put it in his famous dissent, "when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas—that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., with Brandeis, J., dissenting). In the modern era, there is perhaps no clearer manifestation of the marketplace of ideas than the interactive sections of a public university's Facebook page.

Defendant's censorship of PETA's content, and that of its supporters, as alleged, violates these axiomatic principles. There is no point wasting the parties' time and resources in a futile

attempt at proving Plaintiff's protected viewpoint true or false where, regardless of the outcome of such an inquiry, the speech is nevertheless protected by the First Amendment.

If, for any reason, the Court nevertheless deems Defendant's proposed discovery to be warranted in this matter, then such discovery should be reciprocal. Plaintiff would respectfully request an opportunity to revise its written discovery at that point to take discovery as to the operations of Texas A&M's dog laboratories and its public communications regarding those laboratories, in order to prove the truth of Plaintiff's speech. Plaintiff did not request such information in its proposed discovery plan, having heeded the Court's instruction regarding the proper scope of discovery, and instead included only requests that are limited in both time and subject matter. However, in the interest of fairness and reciprocity, Plaintiff should be permitted to take broader discovery if Defendant's request to do so is granted.[3]

**2.      The Only Relevant Forum is Texas A&M's Facebook Page**.

The Court instructed the parties regarding the proper scope of discovery, cabining it to A&M's Facebook page. *See* Exh. 1 (Hr'g Tr.) at 25:17-19 ("To the extent that PETA has questions about the mechanics of the various sites – we're only dealing with Facebook now."). Indeed, this is the only relevant forum as alleged in the Complaint. This suit does not involve other Texas A&M forums, whether its other websites or the grounds of the campus, and the Court should so limit discovery. So Plaintiff limited its requests to this forum.

Defendant did not heed this Court's instruction. Instead, Defendant's proposed discovery requests would impose burdensome search and production costs on Plaintiff by requiring several dozen of Plaintiff's potential records custodians across several of Plaintiff's internal departments

---

[3] Likewise, there should be reciprocity regarding what years are subject to discovery. Plaintiff's discovery requests date back to 2017 only, whereas Defendant's date back to 2016.

to divulge "all content that PETA distributed about TAMU's canine research laboratory," without limitation, including whether or not such content was ever posted to the relevant Facebook forum. Def's RFP No. 2 (ECF No. 38-1 at 5).

Likewise, Defendant requests internal PETA communications or campaign strategies, without regard to whether they bear any relation whatever to any messages actually posted to A&M's Facebook page. This fishing expedition includes the full extent of Plaintiff's advocacy campaigns and investigations—even including those involving institutions other than Texas A&M. *See, e.g.*, Def's RFP Nos. 5, 6, 7, 8, 10, 11 (ECF No. 38-1 at 5-6); Def's Interrogatories Nos. 1, 2, 5, 9, 10, 11, 14 (ECF No. 38-1 at 8-9). These lines of inquiry are irrelevant.

Defendant even seeks information regarding PETA's operation of its own Facebook page and social media accounts. *See* Def's RFP Nos. 1, 9 (ECF No. 38-1 at 5-6); Def's Interrogatories Nos. 9, 10, 12 (ECF No. 38-1 at 8-9). Of course, Plaintiff is not a state actor, and the First Amendment has nothing to say about whether it may exclude others from posting on its Facebook page. Nor would the First Amendment provide a remedy were Plaintiff to be blocked from posting to the Facebook page of another private actor. Indeed, unlike Texas A&M, PETA, as a non-state actor, has a near absolute First Amendment right to exercise editorial discretion over its Facebook page. *Miami Herald Co. v. Tornillo*, 418 U.S. 241 (1974). Texas A&M might at best expose PETA holding itself to different rules than Texas A&M; but those different rules are what the First Amendment commands, not an incriminating practice by PETA. This line of inquiry is irrelevant.

To the extent that Texas A&M seeks this discovery to prove that PETA used channels other than Texas A&M's Facebook page to conduct its campaign against the Texas A&M dog labs, PETA is willing to so stipulate, and evidence of these efforts, being public advocacy campaigns, are readily available through other means, as Texas A&M demonstrated in its Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's discovery requests for information regarding the truth or falsity of PETA's viewpoint; or, in the alternative, if the Court permits this line of inquiry, it should allow PETA an opportunity to revise its proposed discovery requests to probe the truth regarding the A&M dog laboratory. Additionally, the Court should deny Defendant's discovery requests for information regarding Plaintiff's speech activities or internal communications beyond the relevant forum, which is Texas A&M's Facebook page.

DATED: October 4, 2018

Respectfully submitted by:

*/s Gabriel Walters*

DAVID GREENE*
*Attorney-in-Charge for Plaintiff*
California Bar No. 160107
ADAM SCHWARTZ*
California Bar No. 309491
CAMILLE FISCHER*
Maryland Bar No. 201612130192
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 telephone
415.436.9993 facsimile
davidg@eff.org

*Admitted *pro hac vice*

GABRIEL WALTERS*
District of Columbia Bar No. 1019272
PETA Foundation
1536 16th Street NW
Washington, DC 20036
202.483.7382 telephone
gabew@petaf.org

CHRISTOPHER ROTHFELDER
Texas Bar No. 2408470
Southern District No. 2449594
Rothfelder & Falick, L.L.P.
1201 Louisiana St., Suite 550
Houston, TX 77002
713.220.2288 telephone
crothfelder@rothfelderfalick.com

*Attorneys for Plaintiff*