# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No. 4:18-CV-01547 |
| | § | |
| MICHAEL K. YOUNG, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF TEXAS A&M UNIVERSITY, | § | |
| *Defendant*. | § | |

## DEFENDANT'S REPLY IN SUPPORT OF PROPOSED DISCOVERY PLAN

On September 28, 2018, pursuant to the Court's order, the parties submitted proposed discovery plans. Dkts. 36-38. Plaintiff People for the Ethical Treatment of Animals (PETA) submitted a response in opposition to the discovery plan of Defendant Michael K. Young, in his official capacity as president of Texas A&M University (TAMU). Dkt. 39. Mindful that the Court has admonished against expending litigant and judicial resources disputing discovery-related matters, Defendant offers this short submission to respond to the two issues raised therein.

### I. PETA is incorrect that Defendant seeks to "probe the truth or falsity" of PETA's viewpoint.

First, PETA argues that Defendant's proposed discovery requests impermissibly inquire into PETA's "knowledge of whether its speech is true or false." Dkt. 39 at 2. But these requests are not made to "prov[e]" PETA's "viewpoint true or false." Dkt. 39 at 4. Rather, they seek to explore how the communications PETA has put at issue were designed to assist in evaluating whether PETA violated TAMU's

1

social media policy. *See* Dkt. 17-1 (Exhibit A to PETA's Amended Complaint, TAMU Public Notification for Social Media). This is directly relevant to Plaintiff's allegation that its posts were filtered for an illegal reason (namely, to suppress their viewpoint), and Defendant's responsive argument that the posts were subject to removal for violating TAMU's social media policy.

That policy provides for TAMU to remove a post that "advertises or promotes a non-affiliated commercial product or service, or any entity or individual," "violates a trademark, copyright, or other law," "is threatening, harassing or discriminatory," or "incites or promotes violence or illegal activities." Dkt. 17-1 at 4-5. The materials that PETA consulted in creating its content discussing TAMU's laboratory—and the extent and manner in which PETA evaluated those materials before using them as a basis for such content—are probative in this regard. This discovery will assist in determining whether the content at issue (1) was created to promote PETA, (2) violates copyright or other law, (3) was designed to threaten or harass, and (4) whether PETA reasonably anticipated that it would promote violence. PETA has placed these matters at issue by contending that its content was filtered for an unconstitutional purpose (viewpoint discrimination) rather than a legal one (for example, for violating the social media policy).

## II.  PETA's communications outside the context of TAMU's Facebook page are directly relevant to its First Amendment claim.

Second, PETA argues that the scope of discovery in this case is limited to "any messages actually posted on to A&M's Facebook page." Dkt. 39 at 5. *See also, e.g.,* Dkt. 39 at 4 (asserting that "[t]he Court has instructed the parties regarding the

2

proper scope of discovery, cabining it to A&M's Facebook page.") But the existence and scope of alternative channels of communication is *central* to First Amendment forum analysis. *See, e.g. Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 690 (2010) (In rejecting a First Amendment challenge to restrictions on access to a limited public forum, the Court found it significant that there were "'substantial alternative channels that remain open for [the plaintiff's] communication to take place.'") (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 53 (1983)). TAMU's proposed discovery regarding PETA's alternative (non-Facebook) avenues of communication—and PETA's use of those avenues—is directly relevant to the legal analysis at bar.

## CONCLUSION

The Court should reject the arguments in Plaintiff's Response to Defendant's Proposed Discovery Plan, and order Defendant's requests served as submitted at Dkt. 38.1.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Acting Chief - General Litigation Division

3

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Attorney-in-Charge
Texas Bar No. 24078898
Southern District No. 2627567
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4074 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2018, the foregoing document was filed via

the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

4